<u>NOT FOR PUBLICATION</u>                              [Docket No. 19]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

HEIDI E. ANDERSON, ESQUIRE,
Administratrix Ad Prosequendum
for the Estate of Raymundo
Rodriguez, on behalf of the          Civil No. 09-4718
Heirs of the Estate,                 (RMB/KMW)

            Plaintiff,

      v.                             **OPINION**

COUNTY OF SALEM, et al.,

            Defendants.

Appearances:

      Gregory Edward Sciolla
      Paul H. Schultz
      Leonard & Sciolla, LLP
      712 East Main Street
      Suite 1A
      Moorestown, NJ 08057
            Attorneys for Plaintiff

      Athena Olympia Pappas
      Carla P. Maresca
      Sheryl Lynn Brown
      Deasey, Mahoney, Valentini & North, Ltd.
      1601 Market Street
      Suite 3400
      Philadelphia, PA 19103-2301
            Attorneys for Defendants County of Salem,
            Salem County Correctional Facility, Officer Robert
            Flynn, Officer David Schaeffer, Officer Jerry Watt,
            Officer Michael Stockton and Officer Wayne May

**BUMB**, United States District Judge:

1

## I.    Introduction

This matter comes before the Court on a motion brought by Defendants Salem County, Salem County Correctional Facility, Officer Robert Flynn, Officer David Schaeffer, Officer Jerry Watt, Officer Michael Stockton and Officer Wayne May (collectively "Defendants") to dismiss the Amended Complaint of Heidi E. Anderson, Administratrix Ad Prosequendum for the Estate of Raymundo Rodriguez ("Plaintiff").  For the following reasons, Defendants' motion will be granted in part, and denied in part.

## II.  Background

As alleged in the Amended Complaint, on the evening of September 16, 2007, Raymundo Rodriguez ("Rodriguez"), an inmate at Defendant Salem County Correctional Facility, was assigned to the disciplinary unit. (Amended Comp. ¶ 16, 18.)  He was the only inmate assigned to his cell, and no other inmates had access to the cell.  (Amended Comp. ¶ 20.)  At approximately 9:00 p.m., Rodriguez left the cell to take a shower.  (Amended Comp. ¶ 21.)  He was escorted by Defendant Officers Robert Flynn and David Schaeffer.  (Id.)  Twenty minutes later, Rodriguez was escorted back to his cell by Defendant Officers Flynn and Jerry Watt. (Id. ¶ 22.)

At approximately 7:00 a.m. the following morning, Rodriguez was found on the floor of his cell, unresponsive and in severe physical distress. (Id. ¶ 28.)  He had sustained multiple, blunt-

force trauma injuries to the head, limbs, and back and suffered
fractures, hemorrhages and contusions to his scalp, knees, back,
right elbow, and left leg. (Id. ¶ 27.)  Rodriguez was transported
to Salem County Memorial Hospital and, later, to Christiana
Hospital in Newark, Delaware, where he was pronounced dead. (Id.
¶ 29.)

Between 9:20 p.m. on September 16, 2007, and 7:00 a.m. on
September 17, 2007, the only individuals with access to
Rodriguez's cell were Defendant Officers Flynn, Schaeffer, Watt,
Stockton and May (hereafter the "Individual Defendants"). (Id. ¶
25.)  Plaintiff contends that one or more of these Individual
Defendants caused Rodriguez's death.  (Id. ¶ 31.)

Plaintiff seeks damages under various federal and state laws
from the Individual Defendants, as well as the Salem County
Correctional Facility and the County of Salem, the owner and
manager of the Correctional Facility (hereafter the "Entity
Defendants"). (See Docket No. 16.)  Defendants now move to
dismiss several of Plaintiff's claims.

### III. Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss, courts must
view all allegations in the complaint in the light most favorable
to the plaintiff, Jordan v. Fox, Rothschild, O'Brien & Frankel,
20 F.3d 1250, 1261 (3d Cir. 1994), and accept any and all
reasonable inferences derived from the facts alleged.  Unger v.

Nat'l Residents Matching Program, 928 F.2d 1392, 1394-95 (3d Cir. 1991). Based upon the face of the complaint, courts must decide if "enough facts to state a claim for relief that is plausible on its face" have been alleged. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations omitted). In other words, courts must review the complaint to determine:  (1) if it alleges genuine facts, rather than mere legal conclusions; (2) if the facts alleged (assumed to be true), as well as the reasonable inferences drawn therefrom, establish a claim; and (3) if relief based upon the facts alleged is plausible. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).

## IV.  Discussion

Defendants raise various arguments for dismissal. The Court addresses each in turn.

### A.  Exhaustion of Remedies

The Court notes at the outset that Defendants' argument that Plaintiff's federal claims cannot proceed because Rodriguez failed to exhaust his administrative remedies, as required by the Prisoner

Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), lacks merit.   To the extent Defendants argue that Plaintiff has failed to show that the decedent, Rodriguez, failed to exhaust his administrative remedies, it is a preposterous argument.   His death prevented him from doing so. See Torres Rios v. Pereira Castillo, 545 F.Supp.2d 204, 206 (D.Puerto Rico 2007).   Second, to the extent Defendants complain of Plaintiff's failure to exhaust administrative remedies, the PLRA does not apply to non-prisoners.   The PLRA requires that:   "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   Id. (emphasis added).   Plaintiff, as representative of Rodriguez's estate, cannot be considered a "prisoner" under the Act.   See Torres, 545 F.Supp.2d at 206 ("Because an estate cannot be imprisoned nor accused, convicted, or sentenced for a criminal violation, it is not, thus, a prisoner under the PLRA.").

### B.   Plaintiff's § 1983 Claims

Plaintiff brings claims against all Defendants pursuant to 42 U.S.C. § 1983, which states:

> Every   person   who,   under   color   of   any   statute,
> ordinance, regulation, custom, or usage of any State .
> . . subjects, or causes to be subjected, any citizen of
> the   United   States   or   other   person   within   the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress.

Id.

To recover under this Section, therefore, a plaintiff must establish two elements:  (1) "the violation of a right secured by the Constitution and laws of the United States" and (2) "that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).

### 1. Plaintiff's § 1983 Claim Against the Individual Defendants

Defendants argue that Plaintiff cannot sustain her § 1983 claims against the Individual Defendants because she cannot establish that Rodriguez was deprived of any right guaranteed him by law.  Moreover, Defendants argue that the Individual Defendants are entitled to qualified immunity because Plaintiff cannot show that Rodriguez's constitutional rights were violated or that such rights were "clearly established."

Courts apply a two-step analysis when determining whether a defendant-officer is entitled to qualified immunity.  "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Pearson v. Callahan, 129 S.Ct. 808, 815-16 (2009)(citing Saucier v. Katz,

533 U.S. 194, 201 (2001)) (internal citations omitted).  The
sequence in which these issues are addressed is left to the
Court's discretion.  Id. at 818.

### a.   Rodriguez's Constitutional Rights

Turning first to the question of whether the Individual
Defendants' conduct violated Rodriguez's constitutional rights,
the Court notes Plaintiff's allegation that Rodriguez

> has been deprived by Defendants, acting under the color of
> law, of the rights, privileges and immunities secured to him
> by the Constitution of the United States, particularly his
> right to life, bodily integrity, security of person and
> freedom from threats of harm, force or violence, guaranteed
> by the Fourth and Fourteenth Amendments.

(Amended Comp. ¶ 41.)  The Court begins its analysis by
determining the relevant facts pled in support of Plaintiff's
constitutional claims and views such facts in the light most
favorable to the Plaintiff.  Giles v. Kearney, 571 F.3d 318, 326
(3d Cir. 2009) (citing Scott v. Harris, 550 U.S. 372, 378 (2007);
Saucier, 533 U.S. at 201).

### i.   Plaintiff's Fourth Amendment Claim

As noted, Plaintiff alleges that between the hours of 9:20
p.m. and 7:00 a.m. on the evening of September 16, 2007,
Rodriguez sustained multiple, blunt-force trauma injuries to the
head, limbs, and back and suffered fractures, hemorrhages and
contusions to his scalp, knees, back, right elbow, and left leg,
which led to his death.  (Amended Comp. ¶¶ 26-30.)  Plaintiff

further alleges that the only individuals with access to
Rodriguez's cell during this time period were Defendant Officers
Flynn, Schaeffer, Watt, Stockton and May and that one or more of
these individuals caused Rodriguez's death (Id. ¶¶ 25, 31.)

From these facts, the Court infers that Plaintiff intends to
bring an excessive force claim against the Individual Defendants.
The Court's analysis of a § 1983 excessive force claim "begins by
identifying the specific constitutional right allegedly infringed
by the challenged application of force." Graham v. Connor, 490
U.S. 386, 394 (1989) (citing Baker v. McCollan, 443 U.S. 137, 140
(1979) ("The first inquiry in any § 1983 suit" is "to isolate the
precise constitutional violation with which [the defendant] is
charged")). Here, although Plaintiff appears to state a Fourth
Amendment excessive force claim, this constitutional standard
applies only to claims of "excessive force-deadly or not-in the
course of an arrest, investigatory stop, or other seizure of a
free citizen." Id. at 395 (emphasis added). By contrast, the
Eighth Amendment provides the appropriate constitutional standard
for analyzing excessive force claims brought by, or on behalf of,
prisoners. Id. at 394 (citing Whitley v. Albers, 475 U.S. 312,
318-326 (1986) (noting that excessive force claims involving a
prisoner are analyzed under an Eighth Amendment standard));
compare Lora-Pena v. F.B.I., 529 F.3d 503, 505 (3d Cir. 2008)
(agreeing that District Court properly analyzed prisoner's

excessive force claim under the Fourth Amendment because the allegations arose from conduct that took place during prisoner's arrest). Therefore, to the extent that Plaintiff alleges a Fourth Amendment violation, she fails to make out a constitutional claim.

Plaintiff does appear to state an Eighth Amendment claim, however. "[U]nnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley, 475 U.S. at 319 (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977)). When reviewing an Eighth Amendment claim, the Court must analyze whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Austin v. Tennis, Civ. No. 10-1158, 2010 WL 2089638, at *4 (3d Cir. May 26, 2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). Courts consider:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Id. (citing Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)). The nature of an inmate's injuries is also relevant to the analysis. Id. (citing Brooks, 204 F.3d at 104).

Here, there can be no debate regarding the seriousness of Rodriguez's injuries.  Plaintiff alleges that Rodriguez sustained multiple, blunt-force trauma injuries to the head, limbs, and back and suffered fractures, hemorrhages and contusions to his scalp, knees, back, right elbow, and left leg and that these injuries caused his death. (Id. ¶¶ 27-29.)  Given the lethal nature of these injuries, and viewing all allegations in the Amended Complaint in the light most favorable to Plaintiff, she states a plausible claim for excessive force under the Eighth Amendment.

Plaintiff's Amended Complaint, however, fails to cite specifically an Eighth Amendment violation.  Plaintiff does, however, broadly allege a federal constitutional violation. Given that Defendants were clearly on notice that Plaintiff was stating an excessive force claim, albeit citing the wrong constitutional standard, as well as the interests of judicial economy and efficiency, the Court will permit Plaintiff thirty days to amend her Complaint to plead specifically an Eighth Amendment excessive force claim.[1]

---

[1]     Defendants argue in their brief that "Plaintiff's Amended Complaint appears to set forth claims that had [Rodriguez] received medical care while at Salem County Correctional Facility, he would not have died."  Plaintiff responds, however, that Defendants' suggestion that Plaintiff's claim against the Individual Defendants "focuses on a lack of medical attention is misguided."  Pl. Br. at 8.
The Court notes that Plaintiff's Amended Complaint is not a

### ii.  Plaintiff's Fourteenth Amendment Claim

It is also unclear from the Amended Complaint whether Plaintiff intended to state only a Fourth Amendment excessive force claim, applicable to the states via the Fourteenth Amendment, <u>Maryland v. Pringle</u>, 540 U.S. 366, 369 (2003), or whether Plaintiff has pled a separate Fourteenth Amendment claim. The Supreme Court in <u>Whitley</u>, however, made clear that "the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified."  475 U.S. at 327.  <u>See</u> <u>also</u> <u>Graham</u>, 490 U.S. at 395 n.10 (citing <u>Whitley</u>, 475 U.S. at 327)("Any protection that 'substantive due process' affords convicted prisoners against excessive force is, we have held, at best redundant of that provided by the Eighth Amendment.").  Again, it appears that Plaintiff's claim may properly be brought under the Eighth Amendment, not the Fourteenth.  Therefore, the Court will grant Defendants' Motion

_____

model of clarity.  Because it appears to the Court that Plaintiff does not intend to assert a claim for deliberate indifference to medical need against the Individual Defendants, the Court will not address this issue.  Should Plaintiff disagree, she may file an appropriate motion for leave to amend.  Any such motion should address whether the amendment would relate back to the original claim such that the claim would not be barred by the statute of limitations.

to Dismiss with respect to Plaintiff's Fourteenth Amendment claim against the Individual Defendants.

### b.   "Clearly Established" Rights

Given that the Court has construed Plaintiff's Amended Complaint as stating an Eighth Amendment excessive force claim against the Individual Defendants, she has properly pled a constitutional violation.  Moreover, the Eighth Amendment's prohibition on corrections officers causing physical harm to inmates absent a legitimate, penological reason is clearly established.  See Velez v. Pittman, Civ. No. 09-1418, 2010 WL 2516513, at *3 (D.N.J. June 14, 2010) (citing Hudson, 503 U.S. at 7-9; Hope v. Pelzer, 536 U.S. 730, 737 (2002)).  Given the facts pled in this case, viewed in a light most favorable to the Plaintiff, the Court cannot conclude that it would be unclear to a reasonable officer that assaulting an inmate so as to cause his death was unlawful.

In sum, Plaintiff has sufficiently pled a constitutional violation and demonstrated that the constitutional right at issue was "clearly established."  The Individual Defendants are not entitled to qualified immunity at this early stage.

### 2.   Plaintiff's § 1983 Claims Against the Entity Defendants

Defendants next argue that Plaintiff's § 1983 claims against the Entity Defendants must fail because she cannot establish that

these Defendants adopted any policies or customs that resulted in Rodriguez being deprived of a constitutional right.  Defendants further argue that Plaintiff cannot state a claim for failure to train.

### a.   Plaintiff's Claims Against Salem County Correctional Facility

Although not raised by Defendants, the Court notes, first, that "[i]n the Third Circuit, it is well-settled that a prison or correctional facility is not a 'person' that is subject to suit under federal civil rights laws." <u>Regan v. Upper Darby Tp.</u>, Civ. No. 06-1696, 2009 WL 650384, at *4 (E.D.Pa. 2009), <u>aff'd</u>, 363 Fed. Appx. 917 (3d Cir. 2010).  Therefore, the Court will dismiss Plaintiff's § 1983 claims against the Salem County Correctional Facility.

### b.   Plaintiff's Claims Against Salem County

By contrast, Salem County, as a municipality, is a "person" amenable to suit under § 1983.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978).  Salem County, however, cannot be held liable for acts of its employees or agents under a theory of respondeat superior. <u>See</u> <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003)(citing <u>Monell</u>, 436 U.S. at 691).  Rather, a municipality can be liable under § 1983 "only where the municipality <u>itself</u> causes the constitutional violation at issue.'" <u>Carswell v. Borough of Homestead</u>, 381 F.3d

235, 244 (3d Cir. 2004)(quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989)).

### i.    Plaintiff's Unlawful Policy or Custom Claim

To sustain a claim for unlawful policy or custom, Plaintiff must establish a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." <u>Jiminez v. All Am. Rathskeller, Inc.</u>, 503 F.3d 247, 249-50 (3d Cir. 2007)(quoting <u>City of Canton</u>, 489 U.S. at 385).  Said differently, "municipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 850 (3d Cir. 1990) (quoting <u>Monell</u>, 436 U.S. at 694).

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." <u>Id.</u> (quoting <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990)).  A plaintiff can establish the existence of a custom "by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." <u>Id.</u> (citing <u>Andrews</u>, 895 F.2d at 1480; <u>Fletcher v. O'Donnell</u>, 867 F.2d 791,

793-94 (3d Cir. 1989) ("Custom may be established by proof of knowledge and acquiescence.")).

The Third Circuit has identified "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." <u>Natale</u>, 318 F.3d at 584. These include: (1) "where 'the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy,'" <u>id.</u> (quoting <u>Bd. of County Com'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 417 (Souter, J., dissenting)); (2) "where 'no rule has been announced as policy but federal law has been violated by an act of the policymaker itself,'" <u>id.</u> (quoting <u>Bryan County</u>, 520 U.S. at 417); and (3) "where 'the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" <u>Id.</u> (quoting <u>Bryan County</u>, 520 U.S. at 417-18) (internal quotations omitted).

Plaintiff has not specifically identified which of these three situations applies in this case, and as Defendants argue,

has failed to identify specifically a policy or procedure that led to Rodriguez's alleged injuries.  She nonetheless has pled sufficient facts to state her claim for unlawful policy or custom against Salem County.

Plaintiff alleges that Rodriguez's death "was the direct product of repeated violent blows by one or more of the Individual Defendants," (Amended Comp. ¶ 31), and that these Defendants "had a pattern of using their positions at [the Salem County Correctional Facility] to assault and batter arrestees and/or inmates." (<u>Id.</u> at ¶ 38.)  Plaintiff further alleges that Salem County "knew or should have known that the above-mentioned conduct took place and did take place in the past, and . . . failed to take action and/or investigate said conduct." (<u>Id.</u> at ¶ 39.)  Finally, Plaintiff maintains that "Defendant['s] failure to investigate and/or take action, . . . fostered a policy, custom or practice that condone[ed] such activity or gave the appearance that such activity was in fact condoned." (<u>Id.</u> at ¶ 40.)  The reasonable inferences to be drawn from Plaintiff's allegations are that Salem County was deliberately indifferent to the need to control the acts of its corrections officers and that Rodriguez's injuries and death were causally related to Salem County's custom or practice of permitting officers to assault and batter inmates.

While Plaintiff has pled sufficient facts to ground an unconstitutional policy or custom claim against Salem County, she has not properly identified the constitutional right applicable to Rodriguez's status as an inmate.  Nonetheless, in the interest of judicial economy and efficiency, and given that Plaintiff's Amended Complaint broadly alleges a federal constitutional violation, the Court will permit Plaintiff thirty days to amend her Complaint to assert an Eighth Amendment claim against Salem County.

### ii.  Plaintiff's Failure to Train Claim

To establish a claim based on failure to train or supervise, Plaintiff must demonstrate that the failure amounts to "'deliberate indifference' to the right of persons with whom those employees will come into contact." Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999) (citing City of Canton, 489 U.S. at 388).  Courts recognize that "a failure to train may amount to deliberate indifference where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights." Id. (citing City of Canton, 489 U.S. at 389).  "For example, if the police often violate rights, a need for further training might be obvious." Id. (citing City of Canton, 489 U.S. at 390 n.10; Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989) ("[n]ormally, an unreasonable risk in a supervisory liability

case will be shown by evidence that such harm has in fact occurred on numerous occasions" and a "supervisory official failed to respond appropriately in the face of an awareness of a pattern of such injuries")).

The Third Circuit applies a three-part test to determine whether the deliberate indifference requirement has been met:

> it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

Id. (citing Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)).

In other words, to state her claim, Plaintiff must show that the municipality's "failure to provide specific training . . . has a causal nexus with [the plaintiff's] injuries" and "that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997)(citing Colburn v. Upper Darby Twp., 946 F.2d 1017, 1030 (3d Cir. 1991)). Plaintiff must also show "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could

be found to have communicated a message of approval to the offending subordinate." Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997) (quoting Freedman v. City of Allentown, 853 F.2d 1111, 1117 (3d Cir. 1988)) (emphasis added).

Here, Plaintiff alleges that Salem County was aware that its employees were responsible for the supervision and safety of inmates in the Salem County Correctional Facility. Plaintiff has further pled that Salem County was aware that the Individual Defendants had engaged in a pattern of abuse. (Amended Comp. ¶ 38-39.) Salem County must also have been aware that employees who engaged in abusive behavior toward inmates would deprive these inmates of their constitutional rights.

Defendants' insistence that, at this early stage, Plaintiff "must identify a particular policy and attribute it to a policymaker, at the pleading stage without benefit of discovery, is unduly harsh." Carter, 181 F.3d at 357-58. See also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of'
the necessary element.") (internal citations omitted)).

Again, the Court notes that Plaintiff has not specifically
pled an Eighth Amendment violation to ground her failure to train
claim but will nonetheless grant Plaintiff leave to amend, and
Defendants' motion to dismiss this claim will be denied.

**C.   Plaintiff's § 1985 Claim**

In Count II of her Amended Complaint, Plaintiff brings
claims against all Defendants[2] pursuant to 42 U.S.C. § 1985(3),
alleging that Defendants "conspire[d] for the purpose of
depriving [Rodriguez] of his rights under the United States
Constitution, the New Jersey Constitution and the laws of the
United States and New Jersey." (Amended Comp. ¶ 47.)  To state
her claim, Plaintiff must allege: "(1) a conspiracy; (2)
motivated by a racial or class-based discriminatory animus
designed to deprive, directly or indirectly, any person or class
of persons of the equal protection of the laws; (3) an act in
furtherance of the conspiracy; and (4) an injury to person or
property or the deprivation of any right or privilege of a
citizen of the United States."  El-Hewie v. Bergen County, 348

---

[2]      As previously noted, Salem County Correctional Facility
is not a "person" subject to suit under federal civil rights law.
See Regan, 2009 WL 650384, at *4.  Therefore, the Court will
dismiss Plaintiff's § 1985 claim against the Salem County
Correctional Facility as well.

Fed.Appx. 790, 795 (3d Cir. 2009) (citing <u>Griffin v.
Breckenridge</u>, 403 U.S. 88, 102-03 (1971)).

The Third Circuit directs that "a conspiracy claim 'must
include at least a discernible factual basis to survive a Rule
12(b)(6) dismissal.'" <u>Thakar v. Tan</u>, Civ. No. 09-2084, 2010 WL
1141397, at *2 (3d Cir. Mar. 25, 2010) (quoting <u>Capogrosso v.
Supreme Ct. of N.J.</u>, 588 F.3d 180, 184 (3d Cir. 2009) (per
curiam)). "'[M]ere conclusory allegations of deprivations of
constitutional rights,' are insufficient to state a § 1985(3)
claim." <u>D.R. by L.R. v. Middle Bucks Area Vocational Technical
School</u>, 972 F.2d 1364, 1377 (3d Cir. 1992) (quoting <u>Robinson v.
McCorkle</u>, 462 F.2d 111, 113 (3d Cir. 1972)) (internal citations
omitted).

Here, other than using the term "conspiracy," Plaintiff
fails to allege any facts suggesting that an <u>agreement</u> existed
between Defendants to deprive Rodriguez of his constitutional
rights. <u>See</u> <u>Shipley v. New Castle County</u>, 597 F.Supp.2d 443, 450
(D.Del. 2009) ("While the Complaint contains allegations of
individual acts taken by each Defendant, other than to invoke the
word 'conspiracy', it fails to allege any facts from which one
could infer an agreement or understanding among Defendants to
violate Plaintiffs' constitutional rights, or to discriminate
against them under § 1985."); <u>Ramsey v. Dintino</u>, Civ. No.
05-5492, 2007 WL 979845, at *9 (D.N.J. Mar. 30, 2007) (dismissing

claim where plaintiff "makes no allegation that there was an agreement among the Defendants"). The Court is "mindful that direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances," but here there is simply no "factual basis to support the existence of the elements of a conspiracy:  agreement and concerted action."  <u>Thakar</u>, 2010 WL 1141397, at *2 (quoting <u>Capogrosso</u>, 588 F.3d at 184).

Plaintiff's § 1985 claim is dismissed without prejudice; Plaintiff retains the right to amend to assert a proper factual basis for the claim.[3]

   **D.   Plaintiff's State Law Claims**[4]

---

   [3]   The Court further questions whether Plaintiff has sufficiently pled that the motive of the alleged conspiracy was based on racial or class-based animus, a necessary element to sustain her § 1985 claim.  <u>See El-Hewie</u>, 348 Fed.Appx. at 795. In the context of her New Jersey Law Against Discrimination ("LAD") claim, Plaintiff does plead that Defendants' actions "were motivated, in whole or in part, by the fact that [Rodriguez] was a Hispanic male and/or was from Mexico, and therefore constitute discrimination."  (Amended Comp. ¶ 64.) However, no such allegation of discriminatory motive is pled in the context of the conspiracy claim.  Regardless, as noted, the Court finds that Plaintiff's failure to plead the necessary elements for conspiracy is fatal to her claim.

   [4]   Neither party has addressed whether Plaintiff complied with the notice requirements of the New Jersey Tort Claims Act. <u>See</u> N.J.S.A. 59:8-8.  <u>See also</u> <u>Velez v. City of Jersey City</u>, 180 N.J. 284, 294 (2004) (holding that New Jersey Tort Claim notice requirements apply to intentional tort claims as well as negligence claims).  In the absence of any reason to believe that Plaintiff has not complied with the notice requirements, the

Defendants argue that Plaintiff's state law claims must also be dismissed.  The Court addresses each of these arguments.

### 1.  Plaintiff's Claims Against the Individual Defendants

#### a. Assault and Battery

Count III of Plaintiff's Amended Complaint states an assault and battery claim against each Individual Defendant.  (Amended Comp. ¶¶ 49-53.)  In New Jersey, "[a] person is subject to liability for the common law tort of assault if: '(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension.'"  Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 591 (2009) (quoting Wigginton v. Servidio, 324 N.J.Super. 114, 129 (App.Div. 1999)).  "The tort of battery rests upon a nonconsensual touching."  Id. (citing Perna v. Pirozzi, 92 N.J. 446, 461 (1983)).

Viewing all allegations in the Amended Complaint in the light most favorable to Plaintiff, and granting her the benefit of all reasonable inferences, she has properly stated claims for assault and battery.  Plaintiff alleges that between 9:20 p.m. and 7:00 a.m. on September 16 and 17, 2007, the Individual Defendants were the only persons with access to Rodriguez's cell

_____

Court cannot dismiss Plaintiff's tort law claims on this basis.

and that during that time he sustained multiple, blunt-force trauma injuries. (Amended Comp. ¶¶ 19, 20, 24, 25, 27, 30). These facts support Plaintiff's allegations that the Individual Defendants acted so as to cause Rodriguez to suffer harmful contact, put Rodriguez in imminent fear of such contact and did, in fact, touch Rodriguez without his consent.  Thus, dismissal of this claim is unwarranted at this stage.

### b.   Negligence

Defendants argue that Plaintiff's negligence claim against the Individual Defendants must be dismissed because these Defendants are immune from liability under the New Jersey Tort Claims Act ("NJTCA") pursuant to N.J.S.A. 59:3-2(a).  This section directs that, "[a] public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him." Id.

Immunity pursuant to N.J.S.A. 59:3-2(a), however, is limited "to discretion exercised at the highest levels of government in matters of policy or planning." Tice v. Cramer, 133 N.J. 347, 366 (1993) (citing Costa v. Josey, 83 N.J. 49, 54-55 (1980)).  In rejecting the argument that a police officer was immune pursuant to this section, the New Jersey Supreme Court noted that decisions made by an officer regarding his or her conduct were "infinitely distant from high-level policy or planning decisions" and that labeling such decisions as discretionary "would end all

24

public employee liability, or practically all, for hardly any
acts or omissions are not subject to some judgment or
discretion." Id. (citing Costa, 83 N.J. at 60). See also Ward
v. Barnes, 545 F.Supp.2d 400, 416 (D.N.J. 2008) (finding that
teacher's alleged conduct in failing to supervise students and
prevent assault did not constitute "actual, high-level
policymaking decisions" or "basic policy determinations" so as to
warrant immunity for discretionary decisions under N.J.S.A.
59:3-2(a)).

The Court is also mindful of New Jersey precedent denying
police officers immunity where such officers owed a duty to
render medical assistance. See Rosario v. City of Union City
Police Dep't, 131 Fed.Appx. 785, 790 (3d Cir. 2005) (citing Del
Tufo v. Township of Old Bridge, 278 N.J.Super. 312 (App. Div.
1995), aff'd on other grounds, 147 N.J. 90 (1996); Praet v.
Sayreville, 218 N.J.Super. 218, 488 (1987)). Moreover, in
Rosario, the Third Circuit specifically rejected argument that
officers who failed to administer medical care to an arrestee who
died of an asthma attack while in custody were entitled immunity
under N.J.S.A. 59:3-2:

> Discretionary decisions made during the course of a rescue
> effort are immunized under New Jersey law. N.J.S.A. 59:3-2.
> Defendants in this case do not claim they made a particular
> medical decision that was within their discretion to make.
> This is not a case in which police officers, faced with two
> emergencies and limited resources, exercised the judgment
> vested in them to determine that one situation presents a

25

> more compelling need than another.  Rather, this is a case
> in which police officers, confronted with a medical
> emergency of the arrestee, stood by rather than providing
> oxygen or other assistance.  Plaintiffs did not allege that
> the detectives made a decision which could be considered
> "discretionary"-rather, they allege that the detectives were
> willfully negligent in their provision of medical attention
> to [the decedent].

Id. at 792.

So too here.  Granting Plaintiff the benefit of all reasonable inferences, her allegation is that the Individual Defendants were willfully negligent in either causing Rodriguez to suffer injury and death, failing to protect Rodriguez from harm or failing to provide medical assistance.  Plaintiff has not alleged that the Individual Defendants made any decision which could be considered "discretionary."

Moreover, as acknowledged by Defendants, and argued by Plaintiff, the NJTCA does not "exonerate a public employee from liability if it is established that his [or her] conduct was outside the scope of his [or her] employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. 59:3-14(a).  In New Jersey, "willful misconduct is not immutably defined but takes its meaning from the context and purpose of its use."  Fielder v. Stonack, 141 N.J. 101, 124 (1995).  Rather, "[t]he label turns on an evaluation of the seriousness of the actor's misconduct."  G.S. v. Dep't of Human Scvs., Div. of Youth & Family Svcs., 157 N.J. 161, 178 (1999)

(citing <u>McLaughlin v. Rova Farms, Inc.</u>, 56 N.J. 288, 306 (1970)).
Willful misconduct falls "somewhere on the continuum between
simple negligence and the intentional infliction of harm."
<u>Alston v. City of Camden</u>, 168 N.J. 170, 185 (2001) (citing
<u>Fielder</u>, 141 N.J. at 123).  Plaintiff here alleges that
Rodriguez's death "was the direct product of repeated violent
blows by one or more of the Individual Defendants."  (Amended
Comp. ¶ 31.)  Certainly, if proven, Plaintiff could succeed in
establishing that such actions constituted willful misconduct.

In sum, the Individual Defendants are not entitled to
immunity under N.J.S.A. 59:3-2(a).  Defendants' motion to dismiss
Plaintiff's negligence claim against the Individual Defendants is
denied.

### c.   New Jersey Law Against Discrimination

Defendants next urge dismissal of Plaintiff's claim
pursuant to New Jersey's Law Against Discrimination ("LAD")
against the Individual Defendants.  The Court begins its analysis
by noting that "[t]he LAD should be construed liberally" and that
"[i]ts purpose is 'nothing less than the eradication of the
cancer of discrimination.'"  <u>Ptaszynski v. Uwaneme</u>, 371
N.J.Super. 333, 345 (App. Div. 2004) (quoting <u>Dale v. Boy Scouts
of Am.</u>, 160 N.J. 562, 584 (1999), <u>rev'd on other grounds</u>, 530
U.S. 640 (2000)).

Plaintiff alleges that the "actions and inactions of Defendants" in either causing Rodriguez to suffer injury and death or failing to protect him were motivated by racial animus. (Amended Compl. ¶ 64.)  The Court understands Plaintiff to assert that Rodriguez suffered discrimination at the hands of an "agent or employee" of a "place of public accommodation" in violation of the LAD.

N.J.S.A. 10:5-12(f)(1) of the LAD directs, in relevant part, that "[i]t shall be . . . unlawful discrimination . . . [f]or any . . . agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof . . . on account of the race . . . of such person . . . ."  Prisons have been held to qualify as "places of public accommodation" under the LAD.  Delbridge v. Whitaker, Civ. No. 2:09-4227, 2010 WL 1904456, at *6 (D.N.J. May 10, 2010) (citing Albrecht v. Williams, Civ. No. 04-1895, 2009 WL 3296649, at *18 (D.N.J. Oct. 13, 2009) ("[u]nder the provisions of the LAD, prisons qualify as places of accommodation"); Jobes v. Moorestown Twp., No. 03-4016, 2006 WL 3000444, at * 11 (D.N.J. Oct.19, 2006) ("an LAD claim against the police department may proceed beyond the dismissal stage because the police department is considered a place of public accommodation")).

But as the Court in Delbridge noted, the New Jersey Appellate Division, in holding that a police station–both the building and the individual officers–was a place of public accommodation, "did not comment on the substantive standard with which to judge police actions in the context of LAD claims." Id. (citing Ptaszynski, 371 N.J.Super. at 347). The Ptaszynski Court did caution, however, that "[i]f a police force is not subject to the LAD, subject to certain constitutional limitations, the officers may be free to discriminate," a result that "would be both inconsistent with and contrary to the goals of the LAD." 371 N.J.Super. at 347-48.

Like the Court in Delbridge, this Court will look to analogous federal anti-discrimination law to determine the substantive standard to apply to Plaintiff's claim against the Individual Defendants, and specifically to the standard used in Equal Protection claims. 2010 WL 1904456, at *6-7 (citing Chisolm v. Manimon, 97 F.Supp.2d 615, 621 (D.N.J. 2000)("New Jersey courts generally interpret the LAD by reliance upon [the construction of] analogous federal antidiscrimination statutes"), rev'd on other grounds, 275 F.3d 315 (3d Cir. 2001); Clark v. Bd. of Educ. of the Franklin Twp. Pub. Sch., Civ. No. 06-2736, 2009 WL 1586940, at *6-11 (D.N.J. June 4, 2009) (analyzing Plaintiff's § 1983 claim of Equal Protection violation and his LAD claims together); Rojas v. City of New Brunswick, Civ. No. 04-3195, 2008

29

WL 2355535, at *32 (D.N.J. June 4, 2008) (using Equal Protection standard to analyze LAD claim regarding an allegedly racially discriminatory arrest)).  Thus, the Court finds that Plaintiff must allege sufficient facts to demonstrate that the Individual Defendants' conduct toward Rodriguez "(1) had a discriminatory effect and (2) [was] motivated by a discriminatory purpose." Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002) (citing Arlington Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 239-42 (1976)).

To establish discriminatory effect, Plaintiff must plead sufficient facts to support a finding that Rodriguez was "a member of a protected class and that [he] was treated differently from similarly situated individuals in an unprotected class." Id. at 206.  Plaintiff has pled that Rodriguez "was a Hispanic male and/or was from Mexico." (Amended Comp. ¶ 64.)  Plaintiff has not pled specifically that Rodriguez was treated differently than other similarly situated prisoners who were not members of a protected class.  Moreover, Plaintiff has broadly, generically pled that the Individual Defendants, with regard to the alleged beating of Rodriguez, have engaged in similar, unlawful conduct. (Amended Comp. ¶ 34.)  In the absence of any factual basis to support a finding that the Individual Defendants' actions had a discriminatory effect, Plaintiff's LAD claims must be dismissed.

30

The Court will dismiss Plaintiff's LAD claims, however, without prejudice to Plaintiff's right to amend to assert a proper factual basis for the claims.

### 2.   Plaintiff's Claims Against the Entity Defendants

#### a.   Negligence

Defendants next assert that the Entity Defendants are immune from Plaintiff's negligence claim pursuant to N.J.S.A. 59:2-1 and N.J.S.A. 59:2-3(a).  The NJTCA "limits a public entity's liability for negligence."  T.S. v. New Lisbon Developmental Ctr., 2010 WL 1929582, at *2 (App. Div. May 14, 2010) (citing Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 457 (2009)). Under the Act, "[t]he guiding principle . . . is that 'immunity from tort liability is the general rule and liability is the exception.'"  Coyne v. State, Dept. of Transp., 182 N.J. 481, 488 (2005)(quoting Garrison v. Tp. Of Middletown, 154 N.J. 282, 286 (1998)).  This basic approach is codified in N.J.S.A. 59:2-1, which states that "[e]xcept as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Here, Plaintiff grounds the Entity Defendants' liability on N.J.S.A. 59:2-2(a), which states that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of

31

his employment in the same manner and to the same extent as a private individual under like circumstances."

Under the NJTCA, "[t]he primary liability imposed on public entities is that of respondeat superior:  when the public employee is liable for acts within the scope of that employee's employment, so too is the entity; conversely, when the public employee is not liable, neither is the entity."  <u>Tice</u>, 133 N.J. at 355 (citing N.J.S.A. 59:2-2(b)) ("[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable").

The Court has not found the Individual Defendants to be immune from liability, which would otherwise immunize the Entity Defendants from liability.  A public entity is also "not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:2-10.  Plaintiff here has clearly alleged that the acts of the Individual Defendants were "willful" and "outrageous."  <u>See</u> Amended Comp. ¶ 32.  Should Plaintiff succeed in establishing that the Individual Defendants' acts constituted "willful misconduct," then the Entity Defendants would be entitled to immunity.  At this early stage, however, dismissal is unwarranted.

Finally, Defendants argue that they are entitled to immunity pursuant to N.J.S.A. 59:2-3(a), which states that "[a] public

entity is not liable for an injury resulting from the exercise of judgment or discretion vested in the entity." In Tice v. Cramer, the New Jersey Supreme Court considered the application of N.J.S.A. 59:2-3(a) to immunize a police officer involved in a fatal crash, as well as the entity charged with training the officer. 133 N.J. at 366-67. The Court ultimately held that the officer and entity were immune pursuant to N.J.S.A. 59:5-2(b), providing immunity for injuries caused by an escapee, but also rejected the argument that immunity was warranted under N.J.S.A. 59:2-3(a). Id.

Noting the parallel provisions of N.J.S.A. 59:2-3, which provides discretionary immunity for public entities, and N.J.S.A. 59:3-2, which provides such immunity for public employees, the Court held that neither the police officer involved in the fatal crash, nor the public entity responsible for training the officer, were entitled to "discretionary immunity." Id. at 366. Rather, "discretionary immunity" was limited "to discretion exercised at the highest levels of government in matters of policy or planning," and "neither the alleged negligence of the public entity nor that of the police officer rose to that level." Id. The Court explained that the public entity's "decision" with respect to officer training "was presumably an operational decision not to train or train well (and indeed there is no evidence of any such 'decision,' an essential element to that

33

kind of immunity)." Id. (citing Smith v. Nieves, 197 N.J. Super. 609, 614-15 (App. Div. 1984), (observing that because police training "concerns operational decisionmaking rather than the formation of basic policy, it does not enjoy the immunity afforded by N.J.S.A. 59:2-3(a)," disagreed with on other grounds by Tice, 133 N.J. at 359-60); Flodmand v. State, Dept. of Insts. & Agencies, 175 N.J. Super. 503, 510 (App. Div. 1980), ("once a basic policy determination has been made, execution of the operational details thereof which are not intrinsically implicated by the policy decision itself is subject to ordinary standards of care"), disagreed with on other grounds by Tice, 133 N.J. at 363-64). Similarly, this Court finds that Defendants have not established that Rodriguez's injuries resulted from any "exercise of judgment or discretion" vested in the Entity Defendants such that immunity is warranted under N.J.S.A. 59:2-3(a).

Simply stated, at this early stage of the proceeding, and given the limited briefing on this issue, the Court is not prepared to dismiss Plaintiff's claim against the Entity Defendants' for negligence. Therefore, the Court also rejects Defendants' argument that the Individual Defendants are entitled to immunity pursuant to N.J.S.A. 59:3-1(c), which directs that

"[a] public employee is not liable for an injury where a public entity is immune from liability for that injury."[5]

### b.   New Jersey Law Against Discrimination

Defendants also seek dismissal of Plaintiff's LAD claims against the Entity Defendants.  As noted, the Amended Complaint fails to state a claim for discrimination in a place of public accommodation.  Should Plaintiff wish to pursue this claim against the Entity Defendants, she can seek leave to amend.

### E.   Damages

Defendants raise several arguments with regard to damages. First, Defendants argue that Plaintiff may not seek punitive damages under federal law.  Plaintiff concedes that punitive damages may not be awarded against a municipality.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). Therefore, such claims against the Entity Defendants will be dismissed.

Defendants further argue that punitive damages may not be awarded against the Individual Defendants in their personal capacities.  Punitive damages may be awarded under § 1983 "when

---

[5]   Moreover, as previously noted, N.J.S.A. 59:3-14(a) directs that "[n]othing in [the NJTCA] shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct."  If Plaintiff succeeds in establishing that the Individual Defendants' conduct constituted "willful misconduct," then liability would attach despite N.J.S.A. 59:3-1(c).

the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Feldman v. Philadelphia Housing Auth., 43 F.3d 823, 833 (3d Cir. 1994) (quoting Smith v. Wade, 461 U.S. 30 (1983)). Plaintiff alleges that Rodriguez's death "was the direct product of repeated violent blows by one or more of the Individual Defendants" and that the Defendants' actions were "willful, intentional and . . . outrageous." (Amended Comp. ¶¶ 31-32.) Granting Plaintiff the benefit of all reasonable inferences, the Court finds Plaintiff's allegations sufficient to support her claim for punitive damages.

Defendants also argue that Plaintiff is not entitled to recover lost wages or future earnings because Defendants "have reason to believe" that Rodriguez was an illegal immigrant who was not entitled to work in the United States pursuant to the Immigration Reform and Control Act ("IRCA"). See Hoffman Plastic Compounds, Inc. v. N.L.R.B., 535 U.S. 137, 147 (2002) ("Congress enacted IRCA, a comprehensive scheme prohibiting the employment of illegal aliens in the United States.") Plaintiff seeks "recovery of pecuniary loss to the Decedent's next of kin" under the New Jersey Wrongful Death Act. (Amended Comp. ¶ 67).

At this stage, in the absence of any evidence that Rodriguez was, in fact, an undocumented worker, the Court declines to reach this issue.

36

## V.   CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss is granted in part, and denied in part.

With regard to Plaintiff's § 1983 claims against the Individual and Entity Defendants, Plaintiff is permitted thirty days to amend her Complaint to plead specifically that Rodriguez was denied protections guaranteed him by the Eighth Amendment. To the extent Plaintiff states a § 1983 claim against the Individual Defendants for a violation of rights guaranteed Rodriguez by the Fourteenth Amendment, such claim is dismissed. Plaintiff's § 1983 claim against Salem County Correctional Facility is also dismissed.

Plaintiff's § 1985 claim against all Defendants is dismissed, and Plaintiff's claims for punitive damages under federal law against the Entity Defendants are also dismissed. Plaintiff's LAD claims against the Individual and Entity Defendants are also dismissed.  Should Plaintiff wish to pursue these claims, she is permitted thirty days to amend her Complaint.

An appropriate Order will issue this date.


Dated: August 5, 2010                    s/Renée Marie Bumb
                                         RENÉE MARIE BUMB
                                         UNITED STATES DISTRICT JUDGE